## MARY L. RAY v. ROBERT M. WAGNER.

176 N. W. (2d) 101.

March 20, 1970—No. 41731.

*Robins, Davis & Lyons* and *Harding A. Orren,* for appellant. *Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *Mary Jeanne Coyne,* for respondent.

OTIS, JUSTICE.

This is an action to recover damages against a physician for failing to give a patient prompt notice of the results of a test which showed the possibility of cancer. The jury rendered a verdict for defendant, and plaintiff appeals from an order denying her a new trial.

The plaintiff, Mrs. Ray, first visited Dr. Wagner on August 6, 1962, after selecting him from a telephone directory. She was examined for the purpose of obtaining a contraceptive device. As a routine matter, the doctor secured from her a so-called Pap smear to determine whether or not there was any possibility she was suffering from carcinoma of the cervix. The smear was sent to a laboratory at Northwestern Hospital and was returned within about 2 weeks with a report that it was "suspicious for malignancy." The doctor attempted to reach Mrs. Ray by telephone on numerous occasions to advise her of the report and to recommend further procedures. He was unsuccessful until January 1963 when she paid the bill for her medical services. In February, Mrs. Ray was given another Pap smear test, which again was "suspicious for malignancy." The Pathology Department of the University of Minnesota Hospitals thereupon performed a biopsy which revealed an "in situ" carcinoma of the cervix about one millimeter in size. The hospital's gynecology department, however, diagnosed the carcinoma as "early invasive." As a result, Mrs. Ray underwent a series of treatments with cobalt and radium therapy which destroyed her ovaries, rendered her sterile, and precipitated symptoms of menopause.

The action was litigated on the theory that the doctor was negligent in failing to notify his patient promptly of her condition and that as a result of her failure to undergo corrective therapy her condition worsened to a point where drastic treatment was required to prevent further progression of the disease.

The case was submitted to the jury on the question of ordinary negligence as well as on the standard of care required of a physician. The issue of contributory negligence was also submitted. After the jury had deliberated for a time, they returned for additional instructions with respect to contributory negligence. That charge was repeated by the court in the presence of counsel.

In denying plaintiff's motion for a new trial, the court noted in its memorandum:

"* * * The evidence disclosed, and the jury could have found,

that plaintiff, in furnishing the defendant information as to her occupation and her husband's occupation and her failure promptly to notify the defendant of a change of address was inconsistent with the behavior to be expected of an ordinarily prudent person and, therefore, negligence."

On appeal, plaintiff claims (1) that the question of contributory negligence should not have been submitted to the jury; (2) that it was error to exclude the testimony of the defendant, sought on cross-examination, which was designed to show the usual practice in the profession with respect to advising patients of suspicious smears; (3) that it was error to permit defendant to show that treatment at the University Hospitals for in situ and invasive carcinoma was the same, without permitting plaintiff to disclose conversations she had with her own doctors which prompted her to submit to cobalt and radium treatments; and (4) that it was error for defendant's counsel to argue to the jury by inference that any verdict would have to be paid by the doctor, thereby suggesting there was no insurance to indemnify him. We have considered all of these issues and are of the opinion that except for the question of contributory negligence they are not of sufficient significance to justify extended discussion. Since the trial court seems to have felt that the decision turned on contributory negligence, it is appropriate to review the evidence bearing on that issue.

Mrs. Ray married one Jhangiani, a University student, on June 30, 1962, and moved from an apartment at 240 University Village to one at 1947 Lake Street in St. Paul. Her children by a previous marriage remained with her mother at her former address. She lived at the Lake Street residence for only a month after her examination and on September 15, 1962, moved to 1508 East 19th Street in Minneapolis. She was there until June 1963, during which time she had no telephone. Mrs. Ray represented to Dr. Wagner that she and her husband both worked at the University, she as a secretary and her husband as an accountant. The doctor testified that he tried to reach Mrs. Ray through the

University, identifying her as a secretary and her husband as an accountant, but that he was unsuccessful. Mrs. Ray admitted that she was not a secretary but worked in a different capacity in the Mayo Memorial Building. Her husband actually was an accountant but was unemployed. The doctor further testified that he attempted several times to reach plaintiff at her Lake Street address without success until December, when he finally spoke to her mother and asked that Mrs. Ray call his office. Mrs. Ray testified that she gave the doctor's office her change of address and argues that she could have been reached at any time by mail.

While it seems clear that defendant had a duty to take whatever steps were reasonable to notify plaintiff of the results of the test she took in August, it was for the jury to decide whether the failure to reach plaintiff was the result of negligence on the part of the doctor, and, if so, whether such negligence proximately caused the condition which resulted from her ultimate treatment. Because of the general verdict, it cannot be determined which issue the jury found decisive. However, the request for further instructions on contributory negligence seems to have prompted the trial court to state that this issue was decided against plaintiff. We might well have come to a different conclusion as jurors. However, it was their prerogative to find that Mrs. Ray did not, in fact, advise the doctor of her change of address, nor did she apprise the receptionist of the urgency for keeping the doctor informed of her whereabouts. Ordinarily, a patient can rely on a doctor's informing her if the results of a test are positive. Here, however, plaintiff gave the doctor somewhat misleading information as to her status, she had no phone at the address where she lived, and she did not live at the address where she had a phone. We cannot say as a matter of law that under all the circumstances the evidence does not support a finding of contributory negligence. Accordingly, the order is affirmed.

Affirmed.